Andrew Kimble
8044 Montgomery Rd., Suite 515
Cincinnati, Ohio 45236
(*pro hac vice*)
614-340-4620
akimble@billerkimble.com
513-715-8711

Attorney for Plaintiff

## In The United States District Court
### For The District of Arizona
### Phoenix Division

| | |
|---|---|
| Michael Holder,<br>*On behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Bacus Foods Corp.; BFCJJS106, LLC; Brandt Bacus; Jared Bacus; John Doe Corp. 1-10; and John Doe 1-10,<br><br>Defendants. | Case No. CV-_____-PHX-_____<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND<br><br>Violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.; the Nebraska Wage and Hour Act (NWHA), Neb. Rev. Stat. § 48-1201, et seq.; and the Nebraska Wage Payment and Collection Act (NWPCA), Neb. Rev. Stat. § 48-1228, et seq., |

DATED this 3rd day of May, 2023.

 s/Andrew Kimble
Andrew Kimble
Attorney for Plaintiff

1.     Plaintiff Michael Holder, on behalf of himself and similarly situated individuals, brings this action against BFCJJS106, LLC, Bacus Foods Corp., Brandt Bacus, Jared Bacus, John Doe Corp. 1-10, and John Doe 1-10 ("Defendants") based on Defendants' compensation and reimbursement policies at the Defendants' Jimmy John's sandwich stores.

2.     Defendants own and operate Jimmy John's franchise stores in Nebraska, Kansas, Colorado, and Arizona (the "Bacus Jimmy John's stores").

3.     Plaintiff and the delivery drivers he seeks to represent are Defendants' delivery drivers.

4.     Defendants have repeatedly and willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), the Nebraska Wage and Hour Act, Neb. Rev. Stat. § 48-1201, et seq. (the "NWHA"), by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

5.     Defendants have also repeatedly and willfully violated the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228, *et seq.* (the "NWPCA"), by failing to pay all wages due to Plaintiff and the Rule 23 class, and by improperly deducting, withholding, and/or diverting wages from the Rule 23 class.

## I.     Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because all Defendants are residents of the State of Arizona.

## II.    Parties

**Plaintiff**

**Michael Holder**

9.      Plaintiff Michael Holder worked for Defendants in Lincoln, Nebraska.

10.     Plaintiff is an "employee" of Defendants as defined in the FLSA, the NWHA, and the NWPCA.

11.     Plaintiff has given written consent to join this action.

**Defendants**

**Bacus Foods Corp.**

12.     Defendant Bacus Foods Corp. is a domestic corporation with its principal place of business at 1404 S. Longmore, Mesa, Arizona 85202.

13.     Upon information and belief, Bacus Foods Corp. owns and operates Jimmy John's sandwich stores in Nebraska, Kansas, Colorado, and Arizona.

14.     Bacus Food Corp. is an owner and operator of BFCJJS106, LLC.

15.     Bacus Foods Corp. is owned and operated by Brandt Bacus and Jared Bacus.

16.     Bacus Foods Corp. is one of the entities that has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

17.     Bacus Foods Corp. may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

18.    Bacus Foods Corp. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.    Upon information and belief, Bacus Foods Corp. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

20.    Bacus Foods Corp. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

21.    At all relevant times, Bacus Foods Corp. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22.    Bacus Foods Corp. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

23.    At all relevant times, Bacus Foods Corp. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24.    Bacus Foods Corp.'s gross revenue exceeds $500,000 per year.

**BFCJJS106, LLC**

25.    Defendant BFCJJS106, LLC is a Nebraska limited liability company with a principal place of business at 1404 S. Longmore, Mesa, Arizona 85202.

26.     BFCJJS106, LLC is one of the entities that owns the Jimmy John's store where Plaintiff Michael Holder works as a delivery driver.

27.     BFCJJS106, LLC is owned and operated by Bacus Foods Corp., Brandt Bacus, and Jared Bacus.

28.     BFCJJS106, LLC is one of the entities that has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

29.     BFCJJS106, LLC is the entity that appears on Plaintiff's paystubs for work he completed for Defendants.

30.     BFCJJS106, LLC may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

31.     BFCJJS106, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.     Upon information and belief, BFCJJS106, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

33.     BFCJJS106, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

34.     At all relevant times, BFCJJS106, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

35.    BFCJJS106, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

36.    At all relevant times, BFCJJS106, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37.    BFCJJS106, LLC's gross revenue exceeds $500,000 per year.

**Brandt Bacus**

38.    Brandt Bacus is an owner and operator of BFCJJS106, LLC and Bacus Foods Corp., (the "Defendant entities").

39.    Brandt Bacus is a person who has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

40.    Brandt Bacus is the president and CEO of some or all of the Defendant entities.

41.    Brandt Bacus may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

42.    Brandt Bacus is individually liable to the Bacus Jimmy John's stores delivery drivers under the definitions of "employer" set forth in the FLSA and Nebraska law because he owns and operates the Bacus Jimmy John's stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the Bacus Jimmy John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

43.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had financial control over the operations at each of the Bacus Jimmy John's stores.

44.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has a role in significant aspects of the Bacus Jimmy John's day to day operations.

45.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had control over the Bacus Jimmy John's stores' pay policies.

46.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had power over personnel and payroll decisions at the Bacus Jimmy John's stores, including but not limited to influence of delivery driver pay.

47.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to hire, fire and discipline employees, including delivery drivers at Bacus Jimmy John's stores.

48.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to stop any illegal pay practices that harmed delivery drivers at the Bacus Jimmy John's stores.

49.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to transfer the assets and liabilities of the Bacus Jimmy John's stores.

50.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to declare bankruptcy on behalf of the Bacus Jimmy John's stores.

51.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to enter into contracts on behalf of each of the Bacus Jimmy John's stores.

52.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus has had the power to close, shut down, and/or sell each of the Bacus Jimmy John's stores.

53.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Brandt Bacus had authority over the overall direction of each of Bacus Jimmy John's stores and was ultimately responsible for their operations.

54.     The Bacus Jimmy John's stores function for Brandt Bacus' profit.

55.     Brandt Bacus has influence over how the Bacus Jimmy John's stores can run more profitably and efficiently.

**Jared Bacus**

56.     Jared Bacus is an owner and operator of BFCJJS106, LLC and Bacus Foods Corp., (the "Defendant entities").

57.     Jared Bacus is a person who has entered into a franchise agreement with Jimmy John's to operate the Bacus Jimmy John's stores.

58.     Jared Bacus is the vice president of some or all of the Defendant entities.

59.     Jared Bacus may command where, when, and how much labor is performed by the delivery drivers at the Bacus Jimmy John's stores.

60.     Jared Bacus is individually liable to the Bacus Jimmy John's stores delivery drivers under the definitions of "employer" set forth in the FLSA and Nebraska law because he owns and

operates the Bacus Jimmy John's stores, serves as a manager of the Defendant entities, ultimately controls significant aspects of the Bacus Jimmy John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

61.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had financial control over the operations at each of the Bacus Jimmy John's stores.

62.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has a role in significant aspects of the Bacus Jimmy John's day to day operations.

63.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had control over the Bacus Jimmy John's stores' pay policies.

64.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had power over personnel and payroll decisions at the Bacus Jimmy John's stores, including but not limited to influence of delivery driver pay.

65.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to hire, fire and discipline employees, including delivery drivers at Bacus Jimmy John's stores.

66.    At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to stop any illegal pay practices that harmed delivery drivers at the Bacus Jimmy John's stores.

67.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to transfer the assets and liabilities of the Bacus Jimmy John's stores.

68.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to declare bankruptcy on behalf of the Bacus Jimmy John's stores.

69.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to enter into contracts on behalf of each of the Bacus Jimmy John's stores.

70.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus has had the power to close, shut down, and/or sell each of the Bacus Jimmy John's stores.

71.     At all relevant times, by virtue of his role as owner and operator of the Defendant entities, Jared Bacus had authority over the overall direction of each of Bacus Jimmy John's stores and was ultimately responsible for their operations.

72.     The Bacus Jimmy John's stores function for Jared Bacus' profit.

73.     Jared Bacus has influence over how the Bacus Jimmy John's stores can run more profitably and efficiently.

**John Doe Corp. 1-10**

74.     Upon information and belief, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and state law and are involved in the operation of the Bacus Jimmy John's stores.

75.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Individuals 1-10**

76.    Upon information, there are other Defendants who own an interest and/or have operational control over the Bacus Jimmy John's stores that also qualify as Plaintiff's "employer" under the FLSA and state law.

77.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.    Facts**

**Class-wide Factual Allegations**

78.    During all or some of the relevant time period, Defendants operated the Bacus Jimmy John's stores.

79.    Upon information and belief, there are Bacus Jimmy John's stores located in Nebraska, Kansas, Colorado, and Arizona.

80.    The primary function of the Bacus Jimmy John's stores is to sell sandwiches and other food items to customers, whether they dine in, carry out, or have their food delivered.

81.    Some or all of the Bacus Jimmy John's stores employ delivery drivers (the "Bacus Jimmy John's delivery drivers" or "delivery drivers").

82.    All delivery drivers employed at the Bacus Jimmy John's stores over the last four years have had essentially the same job duties—deliver sandwiches and other food items to customers, and complete various tasks inside the restaurant when they were not delivering sandwiches.

83.    All of the Bacus Jimmy John's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

84.    The Bacus Jimmy John's delivery drivers' non-tipped job duties were not related to their tipped job duties.

85.    The Bacus Jimmy John's delivery drivers' non-tipped job duties were not completed simultaneously with their tipped job duties.

86.    The Bacus Jimmy John's delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or wrapping sandwiches, doing dishes, cleaning in and around the store, and completing any other tasks necessary for the operation of the restaurant.

87.    The Bacus Jimmy John's delivery drivers have been paid a tipped wage rate for hours worked on the road making deliveries.

88.    The Bacus Jimmy John's delivery drivers have been paid a tipped wage rate for the hours they work inside the store.

89.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' sandwiches and other food items.

90.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS and data charges, and other equipment necessary for delivery drivers to complete their job duties.

91.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, licensing, and registration, paid for storage costs, took time to oversee repairs, and incur cell phone and data charges all for the primary benefit of Defendants.

92.    Defendants reimbursed the delivery drivers based on a percentage of each order they delivered, which was not sufficient to cover all of the delivery drivers' vehicle-related expenses.

93.    The Bacus Jimmy John's stores do not track or maintain records of the actual vehicle-related expenses of the delivery drivers.

94.    The Bacus Jimmy John's stores do not require delivery drivers to provide receipts of vehicle-related expenses incurred by delivery drivers.

95.    The Bacus Jimmy John's stores do not reimburse delivery drivers for their actual vehicle-related expenses.

96.    The Bacus Jimmy John's stores do not reimburse delivery drivers for their vehicle expenses at the IRS standard business mileage rate for each mile they drive.

97.    The Bacus Jimmy John's stores have not reimbursed delivery drivers at a reasonable approximation of the drivers' vehicle expenses.

98.    The Bacus Jimmy John's stores' vehicle expense reimbursement methodology does not fully reimburse delivery drivers for their expenses.

99.    The Bacus Jimmy John's stores' vehicle expense reimbursement methodology has no connection to the vehicle expenses incurred by delivery drivers.

100.   The Bacus Jimmy John's stores did not keep adequate records of the methodology and data they relied upon in determining their reimbursement rates.

101.   According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.   2019: 58 cents/mile
   b.   2020: 57.5 cents/mile
   c.   2021: 56 cents/mile
   d.   2022 (1/1/2022 – 6/30/2022): 58.5 cents/mile
   e.   2022 (7/1/2022 – 12/31/2022): 62.5 cents/mile
   f.   2023: 65.5 cents/mile

102.   As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Nebraska law.

103.   The delivery drivers' unreimbursed expenses amount to unauthorized deductions under the NWPCA and NWHA.

104.   By failing to adequately reimburse for their delivery drivers' vehicle expenses, the Bacus Jimmy John's stores have unlawfully withheld and/or diverted wages from the delivery drivers.

105.   Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

106.   All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

107.   Because Defendants paid their delivery drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

108.   By failing to adequately reimburse for delivery-related expenses, Defendants have taken unauthorized deductions from the wages of the delivery drivers.

109.   By failing to adequately reimburse for delivery-related expenses Defendants have failed to pay all wages due to the delivery drivers in a timely manner.

110.   Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Jimmy John's stores, have taken unauthorized deductions from the delivery drivers' wages, have withheld and/or diverted the delivery drivers' wages, have failed to pay the delivery drivers all wages due, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

111.   Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries—they do not have to incur the expense themselves.

112.   By requiring delivery drivers to provide the cars used to make deliveries for their business, Defendants avoid substantial risk and insurance costs that they would otherwise be required to cover.

113.   By requiring delivery drivers to provide the cars used to make deliveries for their business, Defendants have substantially reduced capital requirements.

114.   The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

115.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

**Plaintiff's Individual Factual Allegations**

116.    Michael Holder has worked as a delivery driver at one of Defendants' Jimmy John's stores located in Lincoln, Nebraska since November 27, 2021.

117.    Michael Holder was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' sandwiches and other food items.

118.    Michael Holder was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary to complete his job duties.

119.    Michael Holder purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

120.    Defendants did not track the actual expenses incurred by Michael Holder.

121.    Defendants did not reimburse Michael Holder based on his actual delivery-related expenses.

122.    Michael Holder was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

123.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Michael Holder.

16

124.    During Michael Holder's employment with Defendants, Defendants have failed to adequately reimburse Michael Holder for automobile and other job-related expenses.

125.    Michael Holder regularly made approximately nineteen to twenty-six deliveries per shift during the hours he worked as a delivery driver.

126.    Michael Holder was reimbursed for making deliveries in his personal vehicle via a 2.3% commission on the orders he delivered.

127.    Plaintiff estimates that the average amount of each order he delivered is approximately $12.50 per order.

128.    At an estimated average of $12.50 per order, Plaintiff was reimbursed $.29 per delivery.

129.    At approximately 2.5 miles per delivery, Plaintiff was reimbursed $.116 per mile.

130.    Plaintiff estimates he completed 5 to 6 deliveries per hour.

131.    In 2023, for example, the IRS business mileage reimbursement was $0.655 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased Plaintiff's net wages by approximately $.539 ($.655 - $.116) per mile. Considering his estimate of about 2.5 average miles per delivery, Defendants under-reimbursed him about $1.34 per delivery ($.539 x 2.5 miles).

132.    Thus, while making deliveries (assuming 5.5 deliveries per hour), Michael Holder has "kicked back" to Defendants approximately $7.37 per hour he worked on the road making deliveries ($1.34 per delivery x 5.5 deliveries per hour).

133.    Michael Holder worked dual jobs—one where he delivered food and received tips, and another where he worked inside the store completing non-tipped duties.

134.    In 2021, Plaintiff was paid $7 per hour for the hours he worked completing deliveries to customers in his personal vehicle, which is a tipped wage rate in Nebraska.

135.    In 2021, Plaintiff was also paid $7 per hour for the hours he worked inside the store, which was a tipped wage rate in Nebraska, as it was below the 2021 Nebraska minimum wage of $9.00 per hour.

136.    In 2022, Plaintiff was paid $9 per hour for the hours he worked completing deliveries to customers in his personal vehicle.

137.    In 2022, Plaintiff was also paid $9 per hour for the hours he worked inside the store.

138.    In 2023, Plaintiff was paid $10 per hour for the hours he worked completing deliveries to customers in his personal vehicle, which is a tipped wage rate in Nebraska.

139.    In 2023, Plaintiff was also paid $10 per hour for the hours he worked inside the store, which is a tipped wage rate in Nebraska, as it is below the 2023 Nebraska minimum wage of $10.50 per hour.

140.    Michael Holder's inside job duties were not related to his delivery job duties.

141.    Michael Holder's non-tipped job duties were not completed simultaneously with his tipped job duties.

142.    Michael Holder's inside duties included taking out trash, doing dishes, cleaning up around the store, boxing up orders, and other duties necessary for the operation of the restaurant.

143.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Michael Holder minimum wage as required by law.

144.    Defendants improperly claimed a tip credit for the hours Michael Holder worked in a non-tipped capacity inside the store.

145.    Michael Holder did not authorize Defendants to deduct a portion of his wages to cover automobile expenses that served Defendants' benefit.

146.    By failing to reimburse Michael Holder for all of his vehicle expenses, Defendants unlawfully withheld and/or diverted a portion of his wages.

**Collective Action Allegations**

147.    Plaintiff brings the First Count against the Defendants on behalf of himself and

All similarly situated current and former delivery drivers employed at the Bacus Jimmy John's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

148.    At all relevant times, Plaintiff and the FLSA collective class have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA collective class minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA collective class.

149.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

150.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

151.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

152.    The FLSA collective class members are readily identifiable and ascertainable.

153.    For the purpose of notice and other purposes related to this action, the FLSA collective class members' names and contact information are readily available from Defendants' records.

154.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA collective classes, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

155.    Plaintiff brings the Second, Third, and Fourth Counts, pursuant to Fed. R. Civ. P. 23, on behalf of himself and

> All current and former delivery drivers employed at the Bacus Jimmy John's stores owned, operated, and controlled by Defendants in Nebraska, during the four years prior to the filing of this Class Action Complaint and the date of final judgment in this matter.

156.    The Rule 23 Class asserts NWHA and NWPCA claims on behalf of delivery drivers employed at the Bacus Jimmy John's stores in Nebraska from the date four years prior to the filing of the original complaint through the date of final judgment.

157.    The Rule 23 Class asserts a claim for unjust enrichment on behalf of delivery drivers employed at the Bacus Jimmy John's stores in Nebraska from the date four years prior to the filing of the original complaint through the date of final judgment.

158.    Excluded from the Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

159.    The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

160.    The hours assigned and worked, the positions held, deliveries completed, miles driven, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

161.    For the purposes of notice and other purposes related to this action, the names and contact information of Rule 23 Class Members are readily available from Defendants.

162.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

163.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

164.    There are more than 50 Rule 23 Class members.

165.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

166.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly claim a tip credit, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, and being unjustly enriched by their automobile policy.

167.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Nebraska wage and hour laws.

168.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

169.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

170.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

171.    Plaintiff are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

172.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

173.    Upon information and belief, Defendants and other employers throughout the state violate the Nebraska wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

174.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

175.    Common questions of law and fact exist as to the Rule 23 Classes that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.  Whether Defendants required Plaintiff and the Rule 23 Class members to drive their own cars for work;

b.  Whether Plaintiff and the Rule 23 Class members were subject to a common vehicle expense reimbursement policy;

c.  Whether Plaintiff and the Rule 23 Class incurred automobile expenses, registration costs, repair and maintenance costs, storage costs, insurance costs, taxes, financing charges, gasoline expenses, and other job-related expenses, as described herein, for Defendants' benefit;

d.  Whether Plaintiff and the Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

f.   Whether Defendants recorded Plaintiff and the Rule 23 Class members' actual vehicle expenses;

g.   Whether Defendants' reimbursement methodology reasonably approximated the automobile expenses of Plaintiff and the Rule 23 Class members;

h.   Whether Defendants took deductions from the wages paid to Plaintiff and the Rule 23 Class without authorization;

i.   Whether Defendants withheld or diverted wages from Plaintiff and the Rule 23 Class;

j.   Whether Defendants paid Plaintiff and the Rule 23 Class all wages due;

k.   Whether Plaintiff and the Rule 23 Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

l.   Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class;

m.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class without compensating for it;

n.   Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

o.   The nature and extent of class-wide injury and the measure of damages for those injuries.

176.   In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### IV.   Causes of Action

### Count 1
**Failure to Pay Minimum and Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

177. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

178. Plaintiff and the FLSA collective class members are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

179. Plaintiff and the FLSA collective class members worked in dual jobs—one that produced tips, and another that did not.

180. Defendants paid Plaintiff and the FLSA collective class members an hourly wage that is at, close to, or below (based on a tip credit) minimum wage for hours worked on the road making deliveries.

181. Defendants required and continue to require Plaintiff and the FLSA collective class members to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA collective class members for said expenses, resulting in underpayment of minimum and overtime wages.

182. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA collective class members.

183. Plaintiff and the FLSA collective class members have been damaged by Defendants' willful failure to pay minimum wage as required by law.

184. As a result of Defendants' willful violations, Plaintiff and the FLSA collective class members are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages—Nebraska Wage and Hour Act**

**Neb. Rev. Stat. §48-1201, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

185.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

186.    Defendants have at all times been an "employer" of Plaintiff and all delivery drivers within the meaning of the NWHA.

187.    Plaintiff and the Rule 23 class members worked in dual jobs—one that produced tips, and another that did not.

188.    Defendants paid Plaintiff and the Rule 23 class members an hourly wage that is at, close to, or below (based on a tip credit) minimum wage for all hours worked.

189.    Defendants failed to pay Plaintiff and the delivery drivers all minimum wages owed.

190.    Defendants required and continue to require Plaintiff and the Rule 23 class members to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the Rule 23 class members for said expenses, resulting in underpayment of minimum wages.

191.    For hours worked in a non-tipped capacity, Defendants have improperly claimed a tip credit from the wages of Plaintiff and the Rule 23 class.

192.    Defendants took unauthorized deductions from the wages of Plaintiff and the delivery drivers.

193.    Defendants conduct and practices, as described herein, were willful and intentional.

194.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the four years prior to the filing of the Complaint.

**Count 3**
**Nebraska Wage Payment and Collection Act—Neb. Rev. Stat. §48-1228, *et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

195.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

196.    The Defendant entities have at all times been an "employer" of Plaintiff and the Rule 23 class within the meaning of the NWPCA.

197.    During all or some of the relevant time period, Defendants Brandt Bacus and Jared Bacus have each been an "employer" of Plaintiff and the Rule 23 class with the meaning of the NWPCA.

198.    Defendants have been required to pay to Plaintiff and the Rule 23 class all wages due to them on regular days designated by the employer or agreed upon by the employer and employee.

199.    Defendants failed to pay Plaintiff and the Rule 23 class all wages due as required by Neb. Rev. Stat. §48-1230(1).

200.    By requiring Plaintiff and the Rule 23 class to provide cars to use to make deliveries as part of their employment with Defendants, Defendants have improperly deducted, withheld, and/or diverted a portion of the wages due to Plaintiff and the Rule 23 class in violation of Neb. Rev. Stat. § 48-1230(1).

201.    Defendants' non-payment of wages, as described herein, were willful.

202.    By reason of the willful and unlawful acts alleged herein, Defendants are liable to Plaintiff and the delivery drivers for unpaid wages, unreimbursed expenses, an additional two times

the amount of unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the four years prior to the filing of the Complaint.

### Count 4
### Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Class)

203.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

204.    The delivery drivers have transferred a benefit to Defendants by using their own cars to work for Defendants.

205.    Defendants are aware of and have accepted and retained the benefit transferred to them by the delivery drivers.

206.    It would be unjust for Defendants to be permitted to retain the benefit transferred to them by the delivery drivers without commensurate compensation.

207.    Plaintiff and the delivery drivers are entitled to receive the reasonable value of the benefits they have conferred on Defendants.

**WHEREFORE,** Plaintiff prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for Nebraska state law claims.

D.    Designation of Plaintiff as representative of the Rule 23 Class of delivery drivers and counsel of record as Class Counsel.

E.    Declaratory judgment that the practices complained of herein are unlawful under the Nebraska Revised Statutes.

F.    An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, and an additional two times the amount of unpaid wages due under Nebraska wage laws.

G.    An award of equitable restitution and damages for unjust enrichment.

H.    An award of prejudgment and post-judgment interest.

I.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J.    Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ Andrew P. Kimble
Andrew R. Biller (*pro hac vice forthcoming*)
Andrew P. Kimble (*pro hac vice*)
Joe Scherpenberg (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
abiller@billerkimble.com
akimble@billerkimble.com
jscherpenberg@billerkimble.com

**ATTORNEYS FOR PLAINTIFF**

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble